UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
                                          :
ELYSE DICKERSON, *et al.*,                 :
                                          :
                          Plaintiff,       :
                                          :
              -v -                         :
                                          :
NOVARTIS CORPORATION and ALCON             :
LABORATORIES, INC.,                        :
                                          :
                          Defendant.       :
                                          :
--------------------------------------------------------------- X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/21/2016
```

1:15-cv-1980-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

Plaintiff Elyse Dickerson, a former marketing director for defendant Alcon Laboratories, Inc. ("Alcon"), alleges that her employer failed to compensate, promote, and provide the same opportunities to her as it did to similarly situated male employees simply because of her gender.  She alleges that after she complained of the discriminatory treatment, her employer initiated a retaliatory investigation in an effort to concoct a reason to terminate her employment, terminated her while she was on medical leave, and then defamed her in news publications after she filed the present suit.  In the same complaint, several other named plaintiffs bring class and collective action claims alleging that Defendants engaged in gender-based pay discrimination.  Ms. Dickerson is not a class or collective action representative.

Defendants seek to sever Ms. Dickerson's individual claims from the class and collective action claims, and to transfer her claims to the Northern District of Texas—where she resides, was employed, complained of discrimination, filed her EEOC charge, and was terminated.  For the reasons outlined below, Defendants' motion is GRANTED.

## II.     BACKGROUND[1]

Ms. Dickerson, a resident of Fort Worth, Texas, worked for Alcon from March 2002 until her employment was terminated on January 2, 2015.  Am. Compl. ¶ 8, Dkt. No. 44.  Throughout her employment, Ms. Dickerson lived and worked in Fort Worth, where Alcon is also headquartered and maintains its principal place of business.  Pechal Decl. ¶¶ 4, 8, Dkt. No. 65.  Alcon has operated as a wholly-owned subsidiary of defendant Novartis Corporation ("Novartis"), a New York corporation, since an April 2011 merger.  Am. Compl. ¶¶ 22–23.

From January 2010 until her termination, Ms. Dickerson was the Global Marketing Director for Alcon, managing one of the largest product portfolios for the company.  Am. Compl. ¶¶ 27–28.  Indeed, Ms. Dickerson alleges that in 2014, she directly oversaw ten major brands with net sales of $1.7 billion, which represented more than 15% of Alcon's business.  *Id.* ¶ 28.  At the time that Ms. Dickerson became Global Marketing Director, she was the first and only female Global Market Director at Alcon.  *Id.* ¶ 34.

In spite of her distinguished performance and accomplishments at Alcon, Ms. Dickerson alleges that she was subjected to gender-based pay discrimination and disparate treatment during her employment.  *See id.* ¶ 30.  Specifically, she alleges that she was compensated at a lower rate than similarly situated male employees—for example, her salary was lower than any male marketing director in 2011—and that she was denied career-enhancing opportunities, such as overseas assignments, that similarly situated male employees received.  *Id.* ¶¶ 31–39.  Ms. Dickerson also alleges that that she was denied promotions and compensation increases, despite commensurate

---

[1] Unless otherwise noted, the facts are taken from the amended complaint, and are accepted as true for the purposes of this motion.  *See Cerussi v. Union Coll.*, 144 F. Supp. 2d 265, 266 (S.D.N.Y. 2001) (accepting as true facts alleged by plaintiff or otherwise undisputed in deciding motion to transfer).  Moreover, "[i]n deciding a motion to transfer, a court may consider material outside of the pleadings."  *Mohsen v. Morgan Stanley & Co. Inc.*, No. 11-cv-6751 (PGG), 2013 WL 5312525, at *3 (S.D.N.Y. Sept. 23, 2013) (collecting cases).

increases in her responsibilities, and given lower performance ratings than male employees because the male evaluators did not "see the leader" in Ms. Dickerson. *Id.* ¶¶ 36–37, 42.

Ms. Dickerson became a vocal opponent of what she viewed as her employer's discriminatory practices, and complained repeatedly of discriminatory treatment. *Id.* ¶¶ 40–44. In response to her outspoken criticism, she alleges, her employer gave her negative performance ratings, froze her salary, failed to award her hundreds of thousands of dollars in long-term incentive compensation, and declined to consider her for new job assignments. *Id.* ¶ 45. Thereafter, on August 12, 2014, Ms. Dickerson filed a charge of discrimination with the Texas Workforce Commission's Civil Rights Division and the Dallas District Office for the United States Equal Employment Opportunity Commission. *Id.* ¶ 46; Charge of Discrimination, Dkt. 69-4.

In response to her filing the EEOC charge, Ms. Dickerson alleges that her employer launched a retaliatory "sham investigation," in an effort to contrive a reason to terminate her employment. Am. Compl. ¶ 47. On January 2, 2015, five months after she filed the EEOC charge and while she was on medical leave, Ms. Dickerson alleges that she was terminated in retaliation for her complaints of gender discrimination. *Id.* ¶ 50. Ms. Dickerson also alleges that a majority of her employee stock grants, worth more than $750,000, were scheduled to vest in just over two weeks from the date of her termination. *Id.*

On March 17, 2015, the present suit was filed. In the complaint, Ms. Dickerson brought individual claims alleging pay discrimination, unlawful discharge, and retaliation under Title VII, 42 U.S.C. §§ 2000e, *et seq.* In addition, Ms. Dickerson's former co-worker, Dr. Susan Orr, brought individual claims under Title VII, as well as individual and collective action claims under the Equal Pay Act, 29 U.S.C. §§ 206 *et seq.* "(EPA"). Ms. Dickerson was not seeking to serve as a collective action representative in the complaint.

During the course of the next year, the parties primarily engaged in private settlement discussions and mediation.  The Court had little involvement with the case during that time, aside from granting the parties' repeated requests for extensions of time to file an amended complaint and to adjourn any initial pretrial conference.  *See, e.g.*, Dkt. Nos. 20, 24, 29, 31.

An amended complaint was filed on December 28, 2015.  In addition to the previously asserted EPA collective action claims, the amended complaint includes class action allegations for Title VII claims of discrimination in pay, promotion, and assignments, and also adds a number of named plaintiffs as class and/or collective action representatives.  Ms. Dickerson is not a class or collective action representative, but maintains her individual claims in the same suit.  In addition to the previously asserted claims, Ms. Dickerson added individual claims for violations of the EPA and the Family and Medical Leave Act ("FMLA").  Moreover, Ms. Dickerson alleges that subsequent to her bringing suit, Alcon and Novartis made defamatory statements regarding the circumstances of her termination—for example, by stating that she was terminated for serious violations of internal policies, which she contends was pretext for retaliation.  Am. Compl. ¶¶ 51–61.  Those statements were published in a number of news publications, including the Wall Street Journal and Fort Worth Star-Telegram.  *Id.* ¶¶ 53, 55.  Accordingly, Ms. Dickerson includes several claims for defamation, slander, libel, and defamation per se in the amended complaint.

In conjunction with the filing of the amended complaint, Plaintiffs filed a motion for preliminary approval of settlement of the class and collective action claims.  Dkt. 36.  The parties thereafter informed the Court that, although they were able to reach agreement on the terms of a settlement for the proposed class and collective action claims, they were not able to reach agreement with respect to Ms. Dickerson's individual claims.  Dkt. No. 39.  Accordingly, the parties submitted a proposed case management plan and scheduling order, proposing a discovery schedule for what the parties described as "the continuing claims" of Ms. Dickerson alone, as distinct from the settling

class and collective action claims.  Dkt. No. 40.  The Court held an initial pretrial conference on January 11, 2016, and entered a case management plan and scheduling order governing Ms. Dickerson's individual claims that same day.  Dkt. No. 52.

During the initial pretrial conference, Alcon indicated that it intended to file a motion to sever Ms. Dickerson's individual claims from the other plaintiffs' class and collective action claims, and to transfer venue of her individual claims to the Northern District of Texas, where Ms. Dickerson resides and Alcon is headquartered.  Alcon filed the motion to sever and transfer on March 7, 2016, Dkt. No. 64, and Novartis joined in the motion that same day, Dkt. No. 66.  The motion was fully briefed as of March 28, 2016.

## III.   SEVERANCE

### A.  Legal Standard

Rule 21 of the Federal Rules of Civil Procedure provides that a court may "sever any claim against a party."  Fed R. Civ. P. 21.  In resolving a motion for severance, courts consider: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims."  *N. Jersey Media Grp. Inc. v. Fox News Network, LLC*, 312 F.R.D. 111, 114 (S.D.N.Y. 2015) (quoting *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 502–03 (S.D.N.Y. 2013)).  "Severance requires the presence of only one of these conditions," although courts "view severance as a procedural device to be employed only in exceptional circumstances."  *Oram*, 979 F. Supp. 2d at 503 (internal quotation marks and citations omitted).

As the moving parties, Defendants "bear[ ] the burden of demonstrating that 'severance is required to avoid prejudice or confusion and to promote the ends of justice.'"  *N. Jersey Media*, 312

F.R.D. at 114 (quoting *Agnesini v. Doctor's Assoc., Inc.*, 275 F.R.D. 456, 458 (S.D.N.Y. 2011)). "The decision whether to grant a severance motion is committed to the sound discretion of the trial court." *New York v. Hendrickson Bros.*, 840 F.2d 1065, 1082 (2d Cir. 1988).

The Court finds that Defendants have met their burden and that severance is appropriate. For all practical purposes, Ms. Dickerson's claims are already functionally proceeding as a separate case. Ms. Dickerson is not a class or collective action representative, and her "continuing claims" are proceeding on an entirely separate track from the class and collective action claims. A case management plan and scheduling order has been entered, and the parties have begun discovery, with respect to Ms. Dickerson's individual claims alone. The class and collective action claims, in contrast, are proceeding towards a potential settlement agreed to by the parties, albeit one that has not been approved by the Court. Thus, any purported efficiency in maintaining Ms. Dickerson's claims in the same suit as the class and collective action claims is largely illusory. *See Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 721 (S.D.N.Y. 2011) (even assuming that claims at issue arise out of same transaction and present common issues of fact and law, finding that "Plaintiffs' arguments with respect to the severance factors are largely illusory" because "resolution of these issues as to [Defendant] will likely never be required").

Turning to the first and second factors, Ms. Dickerson's pay discrimination claims arguably arise from the same transaction or occurrence as the proposed class and collective pay discrimination claims, and may involve some common questions of fact or law. *See Oram*, 979 F. Supp. 2d at 504 ("[T]he same transaction or occurrence factor routinely has been found to exist where employee plaintiffs with varying factual circumstances allege the common denominator of a policy or practice.") (quoting *Gerace v. Cliffstar Corp.*, No. 05-cv-65S, 2009 WL 5042621, at *1 (W.D.N.Y. Dec. 15, 2009)). Nevertheless, the majority of Ms. Dickerson's allegations involve distinct facts and legal claims unique to her alone. Indeed, Ms. Dickerson brings claims for unlawful

termination and retaliation—claims expressly *excluded* from the scope of the release in the proposed

class and collective action settlement, *see* Proposed Settlement Agreement § 10.3, Dkt. No. 38-1—as

well as FMLA and defamation claims that are unrelated to the claims of the proposed class and

collective actions.  Although Ms. Dickerson also alleges individual pay discrimination claims, the

Court is not required "to deny Defendants' severance motion merely because there exist some

common question of law and fact."  *Erausquin*, 806 F. Supp. 2d at 722.

 Moreover, given that the majority of Ms. Dickerson's allegations are unique to her alone, her

individual claims will necessarily involve substantially different witnesses and evidence from the class

and collective action claims.  For instance, witnesses and evidence regarding Ms. Dickerson's

individual performance and her outspoken complaints, the basis for the investigation and resulting

termination, the circumstances regarding her medical leave, and the allegedly defamatory statements,

will require separate proof from the largely statistical evidence that has been offered in support of

the motion for preliminary approval of settlement of the class and collective action claims.[2]  Thus,

there is little to gain in judicial economy from maintaining Ms. Dickerson's individual claims

together with the class and collective action claims, which, as noted above, are proceeding as

functionally separate cases.  *See Medicare Beneficiaries' Def. Fund v. Empire Blue Cross Blue Shield*, 938 F.

Supp. 1131, 1147 (E.D.N.Y. 1996) ("[W]here parties make both class claims and individual damage

claims, the court has the discretion to make appropriate orders such as severance, when necessary.")

(citing *Green v. Wolf Corp.,* 406 F. 2d 291, 301 (2d Cir. 1968)); *see also Roberts v. First Fin. Planners, Inc.*,

No. 05-cv-38-D-D, 2008 WL 4283366, at *2 (N.D. Miss. Sept. 18, 2008) (finding that although

plaintiffs' individual claims for relief "do arise from one transaction or occurrence . . . [p]rosecuting

---

[2] There is little discernable overlap in the amended complaint between the facts alleged in support of Ms. Dickerson's individual claims and the sparse facts alleged in support of the class and collective action claims—the latter of which are alleged in separate sections of the complaint.

the individual claims along with the class action claims is inappropriate and will do nothing more than complicate the class action litigation.").

The Court also finds that granting severance would not materially prejudice any party. Although Plaintiffs assert that the case has proceeded as a single action for over a year and that requiring that they change gear at this juncture would cause undue prejudice, the Court disagrees. The litigation has effectively proceeded as two distinct actions on separate tracks, and, although this matter was commenced over a year ago, the parties spent the vast majority of that time in settlement discussions with little involvement of the Court.  Given the distinct factual allegations and legal claims, severance of Ms. Dickerson's claims "would reduce the potential for prejudice that could arise from confusion of the factual issues and legal claims made by the plaintiffs."  *Benedith v. Malverne Union Free Sch. Dist.*, 38 F. Supp. 3d 286, 339 (E.D.N.Y. 2014) (internal quotation marks and citation omitted).[3]

Finally, severance would facilitate transfer, which the Court also finds appropriate, as addressed below.  *See Wyndham Associates v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968) (courts may sever claims for the purpose of permitting transfer "where the administration of justice would be materially advanced by severance and transfer"); *see also* 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1689 (3d ed.) ("Even when venue is proper as to all defendants, the court may sever a claim against a party and transfer it to a more convenient forum . . . .").  Thus,

---

[3] Plaintiffs also contend that, although Ms. Dickerson is not a class representative, all of the named plaintiffs bringing Title VII claims in this action are "piggybacking" off of the class charge that she filed, and thus would be prejudiced by severance.  "The Second Circuit has adopted the 'single filing rule'—also known as 'piggybacking'—'which provides that where one plaintiff has filed a timely EEOC complaint, other non-filing plaintiffs may join in the action if their individual claims arise out of similar discriminatory treatment in the same time frame.'"  *Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407, 454 (S.D.N.Y. 2014) (quoting *Snell v. Suffolk Cnty.,* 782 F.2d 1094, 1100 (2d Cir. 1986)).  Contrary to Plaintiffs' assertion, each of the named plaintiffs asserting Title VII claims filed their own EEOC charge.  Plaintiffs fail to articulate how they are "piggybacking" off of Ms. Dickerson's charge—and more importantly, fail to identify the prejudice that would result from severance.  *See* Dkt. No. 54-4.

taking all of the above-referenced factors into account, the Court finds that severance of Ms. Dickerson's individual claims is appropriate.

## IV.   TRANSFER

### A.  Legal Standard

Defendants also seek to transfer Ms. Dickerson's claims to the Northern District of Texas (Fort Worth Division), where she resides.  Section 1404(a) of Title 28 provides:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  28 U.S.C. § 1404(a). "Thus, § 1404(a) proposes a two-part test.  First, the transferee district must be one where jurisdiction over the defendant could have been obtained at the time suit was brought, regardless of defendant's consent.  Second, the transfer must be in the interest of justice and convenience of the parties and witnesses."  *In re CenturyLink, Inc. Sec. Litig.*, No. 13-cv-3839 (LTS), 2014 WL 1089116, at *1 (S.D.N.Y. Mar. 18, 2014) (ellipses omitted) (quoting *Whitehaus Collection v. Barclay Products, Ltd.*, No. 11-cv-217, 2011 WL 4036097 (S.D.N.Y. Aug. 29, 2011)).

The parties do not dispute that Ms. Dickerson's claims could have been brought in the Northern District of Texas.  Having satisfied that threshold inquiry, the Court must evaluate the following factors to determine whether to grant a motion to transfer venue:

> (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

*Steck v. Santander Consumer USA Holdings Inc.*, No. 14-cv-6942 (JPO), 2015 WL 3767445, at *2 (S.D.N.Y. June 17, 2015) (quoting *Ritchie Capital Mgmt., L.L.C. v. U.S. Bank Nat. Ass'n*, No. 14-cv-8513 (PAE), 2015 WL 1611391, at *1 (S.D.N.Y. Apr. 10, 2015)).

The list of factors is not exhaustive, *Pausch Med. GmbH v. Pausch LLC*, No. 14-cv-1945 (PAC), 2015 WL 783365, at *1 (S.D.N.Y. Feb. 24, 2015), and "[t]here is no rigid formula for balancing these factors and no single one of them is determinative," *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000). Rather, "weighing the balance is essentially an equitable task left to the Court's discretion." *Id.* (internal quotation marks and citation omitted). The Court, moreover, has "broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).

"[T]he party requesting transfer carries the burden of making out a strong case for transfer," and district courts "have consistently applied the clear and convincing evidence standard in determining whether to exercise discretion to grant a transfer motion." *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (internal quotation marks and citation omitted).

### A. The Convenience of the Witnesses and the Availability of Process to Compel Attendance of Unwilling Witnesses

"Courts typically regard the convenience of witnesses as the most important factor in considering a § 1404(a) motion to transfer." *Jackson v. Avis Rent A Car Sys., LLC*, No. 14-cv-1658 (LLS), 2015 WL 1004299, at *3 (S.D.N.Y. Mar. 6, 2015) (quoting *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004)). In conducting this analysis, the Court "weighs more heavily the convenience of non-party witnesses than party witnesses." *McGraw-Hill Companies Inc. v. Jones*, No. 12-cv-7085 (AJN), 2014 WL 988607, at *7 (S.D.N.Y. Mar. 12, 2014).

The party moving for transfer "must provide the Court with a detailed list of probable witnesses who will be inconvenienced if required to testify in the current forum." *Kiss My Face Corp. v. Bunting*, No. 02-cv-2645 (RCC), 2003 WL 22244587, at *2 (S.D.N.Y. Sept. 30, 2003). The Court "does not merely tally the number of witnesses who reside in the current forum in comparison to

the number located in the proposed transferee forum"; but rather "must qualitatively evaluate the materiality of the testimony that the witnesses may provide." *Herbert*, 325 F. Supp. 2d at 286.

In support of the motion to transfer, Alcon submitted a declaration from Cindy Pechal, the head of Alcon's human resources department, describing the key witnesses who would be inconvenienced by the current forum. The list of witnesses include current Alcon employees and one former employee, responsible for: supervising Ms. Dickerson; investigating her allegations of gender discrimination; attending meetings where her negative performance evaluations were determined; investigating the allegations that resulted in her termination; participating in the meeting that led to her termination; and employees familiar with company's compensation, benefits, and promotion policies. *See* Pechal Decl. ¶¶ 9–19. Each of those individuals resides in Texas. *See id.*

Plaintiff argues that the convenience of witnesses does not favor transfer because Novartis identified twenty-four witnesses in its initial disclosures "who reside or work in the New York City metropolitan area." *See* Harwin Decl. ¶ 16, Dkt. No. 69-1. Plaintiff does not explain the anticipated testimony of the witnesses, but nevertheless asserts that three of the individuals "may have information pertaining to Ms. Dickerson's retaliation claim," and that at least four of the individuals "may have information pertaining to Ms. Dickerson's defamation claims." *Id.* ¶ 17. On that basis, Plaintiff argues that the total number of potential witnesses that would be inconvenienced by transfer to the Northern District of Texas is greater than those that would be inconvenienced by a New York forum.

Plaintiff's argument fails for several reasons. First, as noted above, the Court does not "merely tally" the number of witnesses that reside in each forum, but rather must "qualitatively evaluate the materiality of the testimony" from each of the witnesses. *Herbert*, 325 F. Supp. 2d at 286; *see also* 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3851 (3d ed.) (explaining that courts "have been careful not to let a motion for transfer become 'a battle of

numbers'"). Although the Novartis employees may have information that is *relevant* to Ms. Dickerson's claims, Plaintiff fails to provide any description of the anticipated testimony. Thus, the Court cannot discern if any of the witnesses would provide *material* testimony.[4]  *See Pace v. Quintanilla*, No. 13-cv-91 (RJS), 2013 WL 5405563, at *3 (S.D.N.Y. Sept. 23, 2013) (Because "Plaintiffs have not discussed the potential testimony of the [anticipated witnesses] . . . there is no basis on which the Court may infer the materiality of their testimony."). In contrast, the witnesses identified by Alcon—supervisors, investigators, and others that worked with Ms. Dickerson and were directly involved in the facts alleged in the complaint—can be expected to provide material testimony. Moreover, Novartis joined in Alcon's motion to transfer, and there has been no representation that any Novartis employees would be unwilling or unable to testify in the transferee forum.

Plaintiff also identifies two sets of non-party witnesses that she asserts would be inconvenienced by a transfer, and would be outside of the subpoena powers of the Northern District of Texas. "The availability of process to compel the testimony of important witnesses is an important consideration in transfer motions." *Martignago v. Merrill Lynch & Co.*, No. 11-cv-3923 (PGG), 2012 WL 112246, at *8 (S.D.N.Y. Jan. 12, 2012) (quoting *Billing v. Commerce One, Inc.,* 186 F. Supp. 2d 375, 378 (S.D.N.Y. 2002)). Rule 45 of provides that a district court may command testimony or production of documents "within 100 miles of where the person resides, is employed, or regularly transacts business in person[.]" Fed. R. Civ. P. 45(c). "The weight given this factor must, however, depend on an assessment of the availability of alternative procedures for preserving those witnesses' testimony, the importance of having them testify live and the importance of other

---

[4] During a pre-motion conference, counsel for Novartis represented that, aside from one 30(b)(6) witness who could explain the shared human resource services that it provides, no Novartis witness could provide material testimony regarding Plaintiff's discrimination claims. February 22, 2016 Hearing Tr. 6:18–7:10, Dkt. No. 69-2.

witnesses, whose live appearance may be prevented by a transfer." *Kelly v. MD Buyline, Inc.*, 2 F. Supp. 2d 420, 442 (S.D.N.Y. 1998).

The first set of witnesses include a former supervisor, Judy Robertson, and former co-worker and current plaintiff, Dr. Orr. Both Ms. Robertson and Dr. Orr reside in Pennsylvania. Harwin Dec. ¶ 18. Although Ms. Dickerson's former supervisor could be expected to provide testimony material to her claims, the materiality of Dr. Orr's testimony is not apparent—Plaintiff simply states that she would offer testimony regarding "Ms. Dickerson's discrimination and defamation claims." *Id.* In any event, both Ms. Robertson and Dr. Orr reside outside of the Southern District of New York, and typically "district courts have given little, if any, weight to the convenience of witnesses who reside in neither the transferor nor transferee forum." *Elec. Workers Pension Fund, Local 103, I.B.E.W. v. Nuvelo, Inc.*, No. 07-cv-1229 (HB), 2007 WL 2068107, at *4 (S.D.N.Y. July 20, 2007).

The other set of non-party witnesses include two former owners and the current owner of Ethis Communications, Inc., all of whom reside in the Southern District of New York. Harwin Decl. ¶ 18. Plaintiff does not explain the anticipated testimony of those witnesses—or explain Ethis's relevance to the case at all—other than to state that they "have important information relating to . . . Plaintiff's retaliation and wrongful termination discharge." *Id.* In reply, Defendants clarify that Ethis is a third-party vendor to whom Ms. Dickerson was accused of approving improper payments, which was the purported basis for Alcon's investigation and ultimate termination of Ms. Dickerson. *See* Def.'s Reply Br. 7, Dkt. No. 72.

Because Plaintiff fails to describe the proposed testimony of the Ethis witnesses, the Court assigns little weight to the potential unavailability of the witnesses. Even assuming the materiality of the Ethis witnesses' testimony, Plaintiff fails to explain the importance of having the witnesses testify in person, rather than through an alternative means. "[E]ven if a party's witnesses do refuse

to testify, deposition testimony is an acceptable alternative." *Martignago*, 2012 WL 112246, at *8 (brackets omitted) (quoting *Farberware Licensing Co. LLC v. Meyer Mktg. Co.,* No. 09-cv-2570(HB), 2009 WL 1357956, at *2 (S.D.N.Y. May 14, 2009)); *see also Jacobsen v. Dhundale*, No. 15-cv-6677 (KBF), 2016 WL 94256, at *2 n.2 (S.D.N.Y. Jan. 7, 2016) (assigning "little or no weight" to argument that transfer would put witnesses outside of 100-mile subpoena zone of transferee court where there was "no information as to whether these witnesses . . . could submit videotaped depositions for trial"); *Caribbean Wholesales & Serv. Corp. v. US JVC Corp.*, No. 93-cv-8197 (PKL), 1996 WL 140251, at *6 (S.D.N.Y. Mar. 27, 1996) ("Even assuming the witnesses' testimony is of value . . . [plaintiff] has failed to show why presentation of their testimony through deposition would be inadequate."); *Longo v. Wal-Mart Stores, Inc.*, 79 F. Supp. 2d 169, 172 (E.D.N.Y. 1999) (granting motion to transfer where "Plaintiff can effectively place the testimony of her New York physicians before an Arizona jury by either a video deposition or live video testimony"). Plaintiff does not suggest that the Ethis witnesses' testimony could not be presented in some form at trial, such as by videotaped depositions.

Evaluating both the number of witnesses that would be inconvenienced and the materiality of the anticipated testimony, as well as the availability of process to compel testimony, the Court finds that these factors weigh in favor of transfer.

### B.  The Convenience of the Parties

"The convenience of the parties favors transfer when transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant." *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 399 (S.D.N.Y. 2014).  Here, Ms. Dickerson resides in, and Alcon has its principle place of business in, the Northern District of Texas.  The convenience to the moving parties is arguably lessened by the fact that Novartis has corporate

offices in the Southern District of New York, but Novartis has nevertheless joined Alcon's motion to transfer, thereby expressing that it will not be inconvenienced by the proposed transfer.

Plaintiff primarily contends that transfer to her home forum would cause substantial inconvenience to her because her counsel, who have offices in New York, would be required to travel or retain local counsel.  Despite Plaintiff's contention to the contrary, "the convenience of counsel is not of particular importance." *GlaxoSmithKline Biologicals, S.A. v. Hospira Worldwide, Inc.*, No. 13-cv-1395 (PKC), 2013 WL 2244315, at *3 (S.D.N.Y. May 21, 2013); *see also Olympia Grp., Inc. v. Cooper Indus., Inc.*, No. 00-cv-7367 (MBM), 2001 WL 506219, at *2 (S.D.N.Y. May 14, 2001) ("[T]he convenience of the parties' lawyers is not relevant to the decision whether to transfer.").  Moreover, the Court observes that Mr. Sanford, one of Plaintiff's principal counsel who has appeared before the Court, is based in the District of Columbia, not the Southern District of New York.  *See* Motion to Appear *Pro Hac Vice*, Dkt. No. 5.

Because transfer to the Northern District of Texas would increase convenience to the parties, the Court finds that this factor weighs slightly in favor of transfer.

### C.  The Location of Relevant Documents and the Relative Ease of Access to Sources of Proof

Defendants contend that most of the relevant documents in this case—personnel files, performance evaluations, benefit plans, and compensation records—are located at Alcon's headquarters in the Northern District of Texas.  Plaintiff, on the other hand, contends that she has given the documents in her possession to her counsel, who have brought them to the Southern District of New York.  Moreover, Plaintiff argues that Defendants maintain some relevant employment records in suburban New Jersey, and that, in any event, the transfer of Alcon's documents from Texas to New York would not impose a substantial burden.

Because the majority of relevant documents are likely to be located in Alcon's headquarters in the Northern District of Texas, the Court finds that this factor weighs in favor of transfer.

Nevertheless, because "this factor is entitled to relatively little weight in the modern era of faxing, scanning, and emailing documents," *McGraw-Hill Companies*, 2014 WL 988607, at *9 (internal quotation marks omitted), the Court assigns little weight to this factor.

### D.  The Locus of Operative Facts

"The location of operative facts is a primary factor in determining a § 1404(a) motion to transfer." *Rosen v. Ritz-Carlton Hotel Co. LLC*, No. 14-cv-1385 (RJS), 2015 WL 64736, at *4 (S.D.N.Y. Jan. 5, 2015) (quoting *Whitehaus*, 2011 WL 4036097, at *2).  "To determine the locus of operative facts, a court must look to the site of the events from which the claim arises." *Ivy Soc'y Sports Grp., LLC v. Baloncesto Superior Nacional*, No. 08-cv-8106 (PGG), 2009 WL 2252116, at *6 (S.D.N.Y. July 28, 2009) (quoting *AVEMCO Ins. Co. v. GSV Holding Corp.,* No. 96-cv-8323 (LAP), 1997 WL 566149, at *6 (S.D.N.Y. Sept 11, 1997)).

Here, the Court finds that the operative events giving rise to Plaintiff's allegations occurred in the Northern District of Texas—that is where she was employed; where she complained of pay discrimination; where she was denied promotions and pay raises; where she was given negative performance evaluations; where she took medical leave; where she was investigated; and where she was ultimately terminated.

Plaintiff primarily argues that the Southern District of New York is the relevant locus for two reasons.  First, Plaintiff contends that her pay discrimination claims originate in the Southern District of New York because that is where Novartis, Alcon's corporate parent, maintains its corporate offices.  In cases alleging that discriminatory employment practices were "coordinated from the corporate headquarters," courts have found that the locus of operative facts is the employer's corporate headquarters.  *See Jones v. Walgreen Co.*, 463 F. Supp. 2d 267, 278 (D. Conn. 2006); *but see Bukhari v. Deloitte & Touche LLP,* 12-cv-4290, 2012 WL 5904815, at *5 (S.D.N.Y. Nov. 26, 2012) (explaining that in wage-and-hour disputes, "the locus of operative facts is the location of

the alleged violations . . . not the corporate headquarters" where the allegedly unlawful practices were formulated).  Because Plaintiff alleges that "Novartis establishes common employment policies, practices, and procedures" for Alcon, Am. Compl. ¶ 25, she concludes that Novartis's New York offices are the relevant locus of the pay discrimination claims.

Plaintiff's argument is unavailing for several reasons.  Most critically, although Plaintiff alleges that Novartis established *some* policies for Alcon, she fails to allege that Novartis established or implemented any *discriminatory* policies—let alone any discriminatory policies that affected Plaintiff.[5]  In contrast, Alcon submitted a sworn declaration that "[t]he personnel, compensation, and employment decisions of which Ms. Dickerson complains . . . were formulated and implemented solely by employees of Alcon."  Pechal Dec. ¶ 22.  Nor is it apparent that any of Novartis's employment policies, discriminatory or otherwise, were formulated in the Southern District of New York.  Plaintiff acknowledges that Novartis has offices "in Manhattan and in East Hanover, New Jersey," Harwin Decl. ¶ 20, but fails to allege that any employment policies were established in the Manhattan office, rather than in the New Jersey office.  During a pre-motion conference, moreover, counsel for Novartis represented that the Novartis entity located in New Jersey is responsible for "human resource type services," rather than the New York office.  February 22, 2016 Hearing Tr. 6:5–17.  On the record before the Court, there is, therefore, no evident material connection between Plaintiff's pay discrimination claims and the current forum.

Plaintiff also contends that the operative events giving rise to her defamation claims occurred in the Southern District of New York because Novartis made defamatory statements from its Manhattan offices to the Wall Street Journal.  Plaintiff's argument misses the mark.  "[I]n a

---

[5] While Plaintiff's counsel baldly asserts that "Novartis is responsible for all the employment policies being challenged in this action," Pls.' Opp'n Br. at 2, Dkt. No. 69, the Court can find no facts alleged in the complaint or in any sworn statements submitted in connection with the present motion that support that contention.

defamation case where the statements at issue are published nationwide 'the tort essentially lacks a locus, but rather injures plaintiff everywhere at once.'" *Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*, No. 06-cv-11407 (BSJ), 2007 WL 4820968, at *4 (S.D.N.Y. Sept. 18, 2007) (quoting *Condit v. Dunne,* 317 F. Supp. 2d 344, 353 (S.D.N.Y. 2004)). Moreover, "[i]n such cases, there is a presumptive rule that the law of the plaintiff's domicile applies." *Broadspring, Inc. v. Congoo, LLC*, No. 13-cv-1866 (JMF), 2014 WL 4100615, at *6 (S.D.N.Y. Aug. 20, 2014). The Court need not determine, and expressly does not state any views regarding, any choice-of-law questions applicable to Plaintiff's defamation claims. Rather, the Court merely concludes that because her injury "essentially lacks a locus," Plaintiff's allegations that defamatory statements were made in New York do not weigh against transfer.

Because the location of operative facts giving rise to Plaintiff's claims is in the Northern District of Texas, the Court finds that this factor strongly favors transfer.

### E.  The Relative Means of the Parties

"Where disparity exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered." *Coast to Coast Fabrics, Inc. v. Exact Change Only Corp.*, No. 04-cv-7300 (DAB), 2006 WL 846716, at *5 (S.D.N.Y. Mar. 29, 2006) (alterations omitted) (quoting *Berman v. Informix Corp.,* 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998)). Plaintiff, an individual, is of much more limited means than Defendants, which are large pharmaceutical corporations.

Nevertheless, "a party arguing for or against transfer on these grounds must offer documentation to show that transfer would be unduly burdensome to his finances." *Seltzer v. Omni Hotels*, No. 09-cv-9115 (BSJ) (JCF), 2010 WL 3910597, at *5 (S.D.N.Y. Sept. 30, 2010) (ellipses omitted) (quoting *Dostana Enterprises LLC v. Fed. Express Corp.*, No. 00-cv-0747 (RWS), 2000 WL 1170134, at *4 (S.D.N.Y. Aug. 16, 2000)). In a written declaration, Plaintiff contends that her

"litigation cost will increase substantially" if the case is transferred to her home forum due to increased travel costs for her out-of-state attorneys, experts, and witnesses. Dickerson Decl. ¶¶ 12–13, Dkt. No. 69-3. Notwithstanding that unsupported assertion, Plaintiff fails to show that litigating this action in her home forum "would impose an undue financial hardship." *See Seltzer* 2010 WL 3910597, at *5 (individual suing corporation failed to "provide any specific support" for the contention that transfer would be "cost prohibitive"); *Wechsler v. Macke Int'l Trade, Inc.*, No. 99-cv-5725 (AGS), 1999 WL 1261251, at *8 (S.D.N.Y. Dec. 27, 1999) ("[P]laintiff's unsupported assertion that plaintiff's means are 'extremely limited' does not suffice to show that transfer would be unduly burdensome."); *Scherillo v. Dun & Bradstreet, Inc.*, 684 F. Supp. 2d 313, 329 (E.D.N.Y. 2010) ("Other than conclusory allegations in his affidavit, plaintiff has not produced documentation that litigating the case in [transferee forum]—as compared to New York—would be prohibitively expensive.").

Thus, the Court finds that this factor weighs only slightly against transfer, and in any event, "this factor has rarely been a dispositive reason to grant or deny a transfer motion, and is not so here." *Schoenefeld v. New York*, No. 08-cv-3269 (NRB), 2009 WL 1069159, at *3 (S.D.N.Y. Apr. 16, 2009) (internal quotation marks and citation omitted).

### F. The Forum's Familiarity With the Governing Law

"Familiarity with the governing law as a factor in determining transfer of venue is generally given little weight in federal courts[.]" *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 479 (S.D.N.Y. 2006) (internal quotation marks and citation omitted). The majority of Plaintiff's claims raise questions of federal law, which either forum is equally capable of deciding. *See Mattel, Inc. v. Procount Bus. Servs.*, No. 03-cv-7234 (RWS), 2004 WL 502190, at *4 (S.D.N.Y. Mar. 10, 2004) ("This case raises questions of federal law. Therefore, either forum is equally capable of hearing and deciding those questions.").

With respect to Plaintiff's state law defamation claims, the parties dispute whether Texas or New York law applies—and thus, whether this factor weighs in favor of, or against, transfer. However, as noted above, the Court need not resolve any conflict-of-law question.  "Federal courts are deemed capable of applying the substantive law of other states," and thus this factor is accorded minimal weight irrespective of whether Texas or New York law applies to the defamation claims. *See Flowserve Corp. v. BMCE, Inc.*, No. 05-cv-8075 (WHP), 2006 WL 2927176, at *4 (S.D.N.Y. Oct. 12, 2006) (internal quotation marks and citation omitted); *see also Nova Grp., Inc. v. Universitas Educ., LLC*, No. 11-cv-342 (AWT), 2011 WL 5570793, at *3 (D. Conn. Nov. 16, 2011) (finding this factor neutral where "courts in both [New York and Connecticut] are capable of applying" federal law and Connecticut law.).  Because both courts are capable of applying the governing law, the Court finds this factor to be neutral.

### G.  The Weight Accorded the Plaintiff's Choice of Forum

"A plaintiff's choice of forum is entitled to considerable weight and is generally not disturbed unless the balance of the factors strongly favors transfer." *McGraw-Hill*, 2014 WL 988607, at *7.  Where "the forum selected is not plaintiff's home forum or the place where the operative facts of the action occurred," however, "this diminishes the weight assigned to this factor." *Id.*; *see also Hix v. Morgan Stanley & Co. LLC*, No. 15-cv-217 (LTS) (JCF), 2015 WL 1726548, at *2 (S.D.N.Y. Apr. 15, 2015) ("[A] plaintiff's choice of forum is given less deference when it is not her home district."); *Simpson v. Rodas*, No. 10-cv-6670 (CS), 2012 WL 4354832, at *10 (S.D.N.Y. Sept. 21, 2012) (importance of plaintiff's choice "measurably diminishes" where operative facts "have few meaningful connections" to plaintiff's chosen forum).

The Southern District of New York is not Plaintiff's home district and the operative facts, as described above, have only a limited connection to the Southern District of New York.  Indeed, Plaintiff's charge of discrimination was filed in Texas—not New York—with both the Texas

Workforce Commission's Civil Rights Division and the Dallas District Office of the EEOC. Plaintiff's choice of forum weighs against transfer, but the weight of this factor is substantially diminished.

### H. Trial Efficiency and the Interests of Justice

"The Court's consideration of whether transfer is in the interest of justice is based on the totality of the circumstances, and relates primarily to issues of judicial economy[.]" *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 407 (S.D.N.Y. 2005) (internal quotation marks and citations omitted). Plaintiff primarily argues that the interests of justice weigh against transfer because this action was commenced over a year ago. The parties spent the vast majority of that time, however, engaged in settlement discussions without the Court's involvement, and the case remains in the early stages of litigation. Because "there has not yet been a significant investment by the Southern District of New York in this case in terms of either time or work," *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*, 119 F. Supp. 2d 433, 439 (S.D.N.Y. 2000), the Court finds that this factor weighs only slightly against transfer. *See also Pecorino v. Vutec Corp.*, 934 F. Supp. 2d 422, 444 (E.D.N.Y. 2012) (noting that "the Court would not be hesitant to transfer the case to Florida at this early stage of the litigation," where complaint was filed almost one year ago but only "minimal discovery" had taken place).

### I. Balancing of the Interests Favors Transfer

Weighing the factors set forth above, the Court in its discretion determines that Defendants have met their burden of demonstrating by clear and convincing evidence that transfer is appropriate.[6]

---

[6] Because the Court finds that transfer is appropriate under 28 U.S.C. § 1404(a), the Court does not reach Defendants' alternative argument that transfer is required under 28 U.S.C. § 1406(a).

**V.      CONCLUSION**

For the reasons set forth above, Defendants' motion to sever the claims brought by Elyse Dickerson and transfer venue of those claims to the U.S. District Court for the Northern District of Texas (Fort Worth Division) IS GRANTED.  The Clerk of Court is directed to terminate the motion pending at Dkt. No. 64.

SO ORDERED.

Dated:  April 21, 2016
New York, New York

_____
GREGORY H. WOODS
United States District Judge